IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**15CV 7350**

TA-MAR LOPER, # 12-A-2718

PLAINTIFF,

V.

DETECTIVE STEPHEN MUNAFO SHIELD NO. 4422
DETECTIVE "JOHN DOE" ROSARIO
DETECTIVE PETER BOHRINGER SHIELD NO. 4624
DETECTIVE "JOHN DOE" SPAGNUOLO
SERGANT CHRISTOP OWEN TAX REG. NO. 924294
POLICE OFFICER SELINDA JONES TAX REG. NO. 915968,

INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES,

DEFENDANTS

COMPLAINT

CIVIL ACTION No. _____

JURY TRIAL DEMANDED

2015 SEP 16 A 11: 30
RECEIVED
EDNY PRO SE OFFICE

I. Complaint

Plaintiff TA-MAR LOPER, PRO SE, for the complaint states as follows:

II. Parties, Jurisdiction And Venue

1) Plaintiff is confined in a State Correctional Institution located at: GREEN HAVEN C.F., Box 4000, STORMVILLE, N.Y., 12582-4000. DIN # 12-A-2718

2) Plaintiff, TA-MAR LOPER is, and was at all times mentioned herein, an adult citizen of the United States and a resident of the State of New York.

3) DEFENDANT STEPHEN MUNAFO was at all relevant times herein a DETECTIVE for the Queens Narcotics Bureau. At: 1 Police Plaza, New York, N.Y. 10007

4) DEFENDANT "JOHN DOE" ROSARIO was at all relevant times herein a DETECTIVE for the Queens Narcotics Bureau. At: 1 Police Plaza, New York, N.Y. 10007

5) DEFENDANT PETER BOHRINGER was at all relevant times herein a DETECTIVE for the Queens Narcotics Bureau. At: 1 Police Plaza, New York, N.Y. 10007

6) DEFENDANT "JOHN DOE" SPAGNUOLO was at all relevant times herein a DETECTIVE for the Queens Narcotics Bureau At: 1 Police Plaza, New York, N.Y. 10007

7) DEFENDANT CHRISTOP OWEN was at all relevant times herein a SERGANT for the Queens Narcotics Bureau. This defendant supervises the preceeding named detectives.

8) DEFENDANT SELINDA JONES WAS at all Relevant times herein a POLICE OFFICER for the Queens Court. At: 125-01 Queens Blvd., Kew Gardens, N.Y. 11415-1568

9) This Action Arises under and is brought pursuant to 42 U.S.C Section 1983 to remedy the deprivation, under color of State law, of Rights guaranteed by the Fifth, ▮ Sixth and Fourteenth Amendments to the United States Constitution. The court has jurisdiction over this Action pursuant to 28 U.S.C Sections 1331 and 1343.

10) The cause of Action Arose in the Southern District of New York. Therefore, venue is proper under 28 U.S.C Section 1391(b).

III. Previous Lawsuits

11) Plaintiff has filed no other lawsuits dealing with the same facts involved in this Action.

IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12) This claim is for a denial of the Right to a fair trial and doesn't involve any prison conditions other than injuries Resulting thereof.

V STATEMENT OF CLAIM

13) At all Relevant times herein, defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under the color of law to deprive Plaintiff of his Federal Rights, as set forth fully below.

VI STATEMENT OF FACTS

14) On January 22nd, 2011 at 5:05 pm, Plaintiff Ta-mar Lopez, non Plaintiffs Edward Muckle and Paul Wiggins were arrested by DEFENDANTS DETECTIVE STEPHEN MUNAFO shield No. 4422, DETECTIVE "John Doe" ROSARIO, DETECTIVE PETER BOHRINGER shield No. 4624, DETECTIVE "John Doe" SPAGNUOLO under the Supervision of DEFENDANT CHRISTOP OWEN TAX REG. No. 924294.

15) Munafo Also informed and provided information ▮ pertinent to the Above described Arrest to DEFENDANT ▮▮▮▮ Police Officer SELINDA JONES of the

"Queens Court" section, tax Reg. no. 915968.

16) On January 22nd, around 5:00pm, Plaintiffs car pulled over on the cor-ner of 155st and 116th in Queens, N.Y. engine still running.

17) Plaintiff was on his way to his cousin Paul Wiggins house for a short visit having to be to work at 11pm in Manhattan at Penn Station for the Long Island Railroad through FEDCAP/VESID.

18) Plaintiff was accompanied by Edward Muckle who is also a relative.

19) Unbeknownst to Plaintiff, Paul Wiggins left his house and approached Plain-tiffs vehicle on foot through the snow to tell Plaintiff what he could no longer park in the driveway because of the snow.

20) While at the vehicle, Paul Wiggins rests both of his arms (in a bent over position) on the edge of Plaintiffs passenger side window door panel and begins a conversation with Plaintiff.

21) While Paul Wiggins was at the vehicle, Plaintiff never touched his hand, Paul Wiggins never handed Plaintiff anything, accepted any money from him nor did the Plaintiff ever sell anything to him. There was absolute-ly no physical contact between the two people mentioned in this para-graph at any time.

22) Within 10 seconds of Paul Wiggins being at the window, an unmarked dark blue van pulled over in front of Plaintiffs vehicle "Blocking" its' path from moving.

23) On the vans driver side was "STEPHEN MUNAFO". On the Passenger side was detective "ROSARIO".

24) The NYPD officers simultaneously exites the van hurriedly and approaches the Plaintiffs "Blocked In" vehicle. Rosario to the drivers side and Munafo approaches Paul Wiggins.

25) Rosario said "Hey, you look kinda funny making movements in the car."

Plaintiff immediately placed his hands on the steering wheel and replies "I'm just here to see my cousin". "Whats the problem officer"?

26) Murato then said "Step out of the car!!" "Both of you". In which there was full compliance. Murato was still standing on the sidewalk next to Paul Wiggins who had stepped away from the vehicle once Murato approached him. Plaintiff and Edward Muckle were now next to Paul Wiggins.

27) Plaintiff was immediately cuffed and placed directly facing the trunk of his vehicle by Murato, pat frisked and held by his right arm. At that point, Plaintiff was not told why he was cuffed.

28) Rosario then cuffed Edward Muckle and stood him next to Plaintiff facing the vehicle. Muckle was not told why he was cuffed either.

29) Paul Wiggins was told not to move.

30) Plaintiff is not sure which NYPD used the walkie-talkie to call NYPD to the scene but while Rosario searched the drivers side of the vehicle and Murato searched the passenger site, within 45 seconds to a full minute, "PETER BOHRINGER", "John Doe Spagnuolo" and 2 other NYPD members appeared and parked a unmarked car in the middle of the intersection.

31) Plaintiff never consented to the search of his vehicle.

32) John Doe Spagnuolo pulled Edward Muckle away from Plaintiff towards where the unmarked car was parked and proceeded to go into Muckles underpants where contraband was found. A search of Plaintiffs car also revealed contraband.

33) Plaintiff and Edward Muckle were escorted to the unmarked van where another person had already been arrested and seated.

34) Approximately 1 minute later, Paul Wiggins was brought on to the van in handcuffs as well. Plaintiffs were driven to the 113th Precinct for processing. 1/21/11

35) Bohringer filled out a deposed and sworn affidavit from informat-ion relayed to him by Murato stating that Plaintiff committed the offenses

⑤

of Penal Law 220.16-1, Criminal Possession of a controlled substance in the 3rd degree; 220.39, Criminal Sale of a controlled substance in the 3rd degree and 220.03 (10/23/10), Criminal possession of a controlled substance in the 7th degree.

36) In sum, the complaint states that Plaintiff was seen by MUNAFO handing Paul Wiggins a "plastic twist" containing "cocaine."

37) Also, upon approaching plaintiffs vehicle, Munafo observed, ~~Paul Wiggins~~ threw said "twist" back into Plaintiffs vehicle on to the passenger seat area.

38) The complaint goes on to say that Munafo observed and recovered (1) "plastic twist" containing a quantity of cocaine from the passenger seat area of the plaintiffs vehicle, (12) plastic twists and (3) plastic bags containing cocaine from the front drivers side floor and $110 dollars in Currency.

39) The complaint against Edward Muckle is identical word for word with an additional paragraph stating "DEPONENT PETER BOHRINGER further states that he is further informed by DETECTIVE MUNAFO that he observed and recovered (6) plastic bags each containing a quantity of cocaine from the pants of the DEFENDANT" and $282.00 dollars from Edward Muckles pockets." SEE EXHIBITS (   ) (in comparison) Muckles paper didn't state a "sale" to Wiggins.

40) As explained in par. (32) of this STATEMENT OF FACTS, EXHIBITS (   ) is a property clerk invoice identifying "John Doe" SPAGNUOLO as the finder of the property on Edward Muckles person also including EXHIBIT (   ). (prisoner pedigree sheet on Edward Muckle) The property clerk invoice pg. identifying the (6) plastic bags is endorsed by Sergeant Christop OWEN.

41) Police Officer Selinda Jones filled out a deposed and sworn affidavit from information relayed to her by Munafo stating that Paul Wiggins committed the offense of Penal Law 220.03 (10/23/10) criminal possession of a controlled substance in the 7th degree, identifying the time being 5:05pm, place as SW intersection of 155st and 116dr, DATE February 22nd, 2011 in the county

of PENAL LAW 220.16-1 "Criminal Possession of a controlled Substance in the 3rd
degree"; 220.16-1 "Criminal Possession of a controlled subst

of Queens that Munafo seen Paul Wiggins in possession of (1) "twist" of "CRACK" cocaine. The affidavit also explains that Munafo recovered (1) twist of "CRACK" cocaine from the passenger seat of the defendants 2001 Volkswagon. No money was recovered from Paul Wiggins. The affidavit never mentioned plaintiffs name as he was the only person responsible for the vehicle on January 22nd, 2011. SEE EXHIBITS ( )

42) EXHIBIT ( ) (Queens County District Attorney Intake Bureau Crime Reports) show that on January 23rd, 2011 at 9:35 AM, the Queens County District Attorney approves the affidavit on account of what Munafo relayed to Bottringer and Jones based on the contraband found causing the arrest.

43) It is believed that Bottringer forwarded the arrest reports and required information to the Queens District Attorneys Office for processing the plaintiffs arrest.

44) On January 23rd, 2011, in Court Part APAR 1/3, Plaintiff was arraigned as charged for criminal sale and possession of a controlled substance in the 3rd degree and bail was set at 15,000.00 cash or bond (CASE# 2011QN003998)

45) On February 8th, 2011, Plaintiff appeared before the judge still incarcerated and got remanded until the next court appearance of March 9th, 2011.

46) On March 3rd, 2011, Plaintiff posted bail in the amount of $3,000.00 bond and was released from Rikers Island VCBC, charges still pending.

47) On March 7th, 2011, Plaintiff found out that his employment was terminated due to the charges pending against him.

48) On March 9th, 2011, plaintiff appeared for court and was told about a Grand Jury Hearing through counsel and the case was again adjourned.

49) On a day in June, 2011, at the Grand Jury Proceedings, Munafo testified that he has been with the Queens Narcotics Bureau for "about seven months".

50) He also testified (Munafo) that Plaintiff Ta-mar Lopez was spotted having

⑦

ing Paul Wiggins a "small object" contradicting information given to both defen-
dants BOHRINGER AND JONES of "twist" of "cocaine" and "twist" of "CRACK
cocaine". Munafo also testifies after blocking Plaintiffs vehicle and exiting
the unmarked van on foot, to the passengers side, Paul Wiggins "threw, drop
-ped "something" onto the passenger seat" in which he visibly saw next to Ed-
wards Knuckles leg and that's how the arrest ensues.

51) The Grand Jury Returned a 5 count indictment against the Plaintiff un-
der No. QN10248/11 charging him with Criminal Sale of a Controlled Subst
ance in the 3rd degree (1); Criminal Possession of a Controlled substance in the
3rd degree (2-3); Criminal Possession of a Controlled substance in the
4th degree (4) and Criminal Possession of a Controlled substance in the 5th
degree (5) setting a date for Motion Practice and trial. SEE EXHIBIT
(   ) 1st forwarded Exhibit

52) Between September and up until November of 2011, Plaintiff made complaints
to the Civilian Committee Review Board (CCRB) and Internal Affairs Bureau
against defendants detectives, Munafo, Rosario ▓▓ Bohringer and Spagnuolo.

53) Complaints #'s 11-508-78 and 11-12783 were concerning the circumstances of
Plaintiffs arrest and reason for the search of his vehicle. The complaints
and exhibits showed discrepancies in the arrest paperwork between the def-
endants mentioned, states Plaintiff never made contact with Paul Wiggins and
Wiggins was arrested without committing a crime. The complaints were closed
and no wrongdoing was found on the part of the NYPD.

54) On December 1st, 2011, Plaintiff was arrested on separate matters and still
remained incarcerated. (indictment No. 2426/11)

55) Plaintiff was granted a Mapp/Dunaway Constitutional Hearing in 2012 where
defendant detective Munafo testified that "he never saw Plaintiff TA-MAR
Cooper hand Paul Wiggins anything" and he never really saw if Paul Wiggins

"Dropped Anything" into Plaintiffs Vehicle. Munato Also testifies that the Plaintiffs vehicle was a "light colored 4 door CAR" (TAN OR WHITE) and when shown AN Allowed exhibit of A complete picture of the Actual vehicle, denies that that was in fact the Plaintiffs CAR which was "grey" in color.

56) Plaintiff, TA-WfA LofER called DEFENDANT DETECTIVE PETER BOHRINGER AS A witness who couldn't explain the Affidavit discrepancy explained in PARS. (39-40) of this STATEMENT OF FACTS between Munato And Sprignuolo finding contraband And money on Edward Muckles person.

57) Bohringer Also confirmed that At the time of Plaintiffs Arrest, he own -es A 2 door Grey Volkswagon Cabrio as indicated on other Arrest paperwork.

58) Plaintiffs Lawyer submitted A memorandum of Law with Respect to the MApp /Huntley Hearing And ADA Jennifer Tubridy Responded And conceded that the Defendant Munato At Least had what is Known As A "founded suspic- ion" that criminal Activity was Afoot At the time Plaintiff was Arrested.

59) On or Around March 30th, 2012, the Judge denies the suppression Motion And set A trial date for May 17th, 2012.

60) On May 17th, 2012, Plaintiff pled guilty to criminal possession of A Weapon in the 2nd degree under indictment No. 2426/11 (In which he still Remains incarcerated) And recieves 7 years determinate with 5 years Post Relea -se supervision to Run concurrent with Criminal Possession of A controlled substance in the 3RD degree under indictment No. N10243/11 And Received 6 years determinate with 1½ years Post Release supervision And was sentenced on June 1st, 2012.

61) On March 19th, 2014, the Appellate division 2nd department Reversed Plaintiffs conviction of May 17th, 2012 And dismissed indictment No. N10248/11 which is the basis for this claim being denial of A Right to A FAIR trial. SEE EXHIBIT ( ) 2nd folwflsh exhibit

62) The Appellate division founs that when DEFENDANTS DETECTIVES MU- NAFO And ROSARIO "Blocked" Plaintiffs CAR from being Able to proceed,

Plaintiff was considered "ARRESTED" from that point on which required a "Reasonable Suspicion" that Plaintiff was about to committ, was committing or has committed a crime.

63) From the evening of January 22nd, 2011 to March 19th, 2014 is a total of 1,151 days (3 years and 56 days) that include numerous court appearances and ultimately incarceration based on false information given to the District Attorneys office by said defendants mentioned in this complaint.

## VII PRAYER FOR RELIEF

64) Plaintiff prays for a judgement in his favor and damages in his favor against all named defendants in this complaint.

65) Plaintiff asks for compensatory damages in the amount of 5 million dollars due to the wrongdoing of the defendants herein mentioned, loss of employment, retirement and wages and even if it is not considerable that Plaintiff would've retired from the Long Island Rail Road, the proper amount of future earnings with that company through FEDCAP/VESID and

66) Punitive Damages in the amount of $250,000.00 from each individual defendant due to Mental degradation, loss of liberty and family ties plus a significant hardship due to Plaintiff being incarcerated. Totalling 6.5 million dollars.

   I declare under penalty of perjury that the foregoing is true and correct

Signed this 8th day of September, 2015

x _Lamar Sofer_    12/12/718

12-A-2718

GREENHAVEN C.F.

BOX 4000

STORMVILLE, N.Y. 12582-4000

16

I declare under the penalty of perjury that on this 14th day of September, 2015, I am delivering this complaint to Prison Authorities to be mailed to the Pro Se Office of the United States District Court for the Southern District of New York.

x _Tamar Lofer_  12-A-2718
TA-MAR Lofer  Din # 12-A-2718

I N D I C T M E N T

S U P R E M E  C O U R T  O F  T H E  S T A T E  O F  N E W  Y O R K

C O U N T Y  O F  Q U E E N S

-----------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK                    |
                                                       |
                    AGAINST                            |    FILED:
                                                       |    INDICTMENT NO. QN10246/2011
                                                       |
XP.   TAMAR LOPER                                       |
          DEFENDANT                                    |
          2011QN003998                                 |
          NYSID# 07736490K                             |
                                                       |
                                                       |
                                                       |

-----------------------------------------

| 220.39-1 | CRIMINAL SALE OF A CONTROLLED SUBSTANCE IN THE THIRD DEGREE (1) |
| 220.16-1 | CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE THIRD DEGREE (2-3) |
| 220.09-1 | CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE FOURTH DEGREE (4) |
| 220.06-5 | CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE FIFTH DEGREE (5) |

A TRUE BILL

-------------------------------                    DISTRICT ATTORNEY

  FOREMAN

2nd EXHIBIT

981 N.Y.S.2d 806, 115 A.D.3d 875, People v. Loper, (N.Y.A.D. 2 Dept. 2014)

Page 1

**\*806** 981 N.Y.S.2d 806

115 A.D.3d 875, 2014 N.Y. Slip Op. 1771

Supreme Court, Appellate Division,
Second Department, New York.

**The PEOPLE, etc., respondent,**
v.
**Tamar LOPER, appellant.**
March 19, 2014.

**Background:** Defendant pled guilty in the Supreme Court, Queens County, Griffin, J., to criminal possession of a weapon in the second degree, and criminal possession of a controlled substance in the third degree. Defendant appealed.

**Holdings:** The Supreme Court, Appellate Division, held that:

(1) failure to make clear that appellate waiver would bar review of defendant's suppression claim rendered the waiver unenforceable;

(2) defendant's claim that police officers lacked reasonable suspicion to stop him when the blocked his car was preserved for appellate review;

(3) by blocking the defendant's car to prevent it from moving, police officers "stopped" it, and thus reasonable suspicion was required; and

(4) officer lacked reasonable suspicion to stop defendant's vehicle.

Reversed and remitted.

West Headnotes

[1]    Criminal Law ☞1026.10(1)

110 ----
110XXIV Review
110XXIV(D) Right of Review
110k1025 Right of Defendant to Review
110k1026.10 Waiver or Loss of Right
110k1026.10(1) In general.

To be enforceable, an appeal waiver must be voluntary, knowing, and intelligent; a appellate waiver meets this standard when a defendant has a full appreciation of the consequences of such waiver.

[2]    Criminal Law ☞1026.10(2.1)

110 ----
110XIV Review
110XXIV(D) Right of Review
110k1025 Right of Defendant to Review
110k1026.10 Waiver or Loss of Right
110k1026.10(2) Plea of Guilty or Nolo Contendere
110k1026.10(2.1) In general.

The plea court must determine, in the first instance, whether an appeal waiver is voluntary, knowing, and intelligent by considering all the relevant facts and circumstances surrounding the waiver, including the nature and terms of the agreement and the age, experience and background of the accused.

[3]    Criminal Law ☞1026.10(2.1)

110 ----
110XIV Review
110XXIV(D) Right of Review
110k1025 Right of Defendant to Review
110k1026.10 Waiver or Loss of Right
110k1026.10(2) Plea of Guilty or Nolo Contendere
110k1026.10(2.1) In general.

Though a court need not engage in any particular litany or catechism in satisfying itself that a defendant has entered a knowing, intelligent and voluntary appeal waiver, it must make certain that defendant's understanding of the waiver is evident on the face of the record.

[4]    Criminal Law ☞1026.10(2.1)

110 ----
110XIV Review
110XXIV(D) Right of Review
110k1025 Right of Defendant to Review
110k1026.10 Waiver or Loss of Right
110k1026.10(2) Plea of Guilty or Nolo Contendere
110k1026.10(2.1) In general.

A written appeal waiver may cure an ambiguity in an oral plea colloquy, but only if the oral colloquy on the record reflects the defendant's understanding of its contents.

[5]    Criminal Law ☞1026.10(4)

110 ----
110XXIV Review

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

**Page 2**

981 N.Y.S.2d 806, 115 A.D.3d 875, People v. Loper, (N.Y.A.D. 2 Dept. 2014)

110XXIV(D) Right of Review
110k1025 Right of Defendant to Review
110k1026.10 Waiver or Loss of Right
110k1026.10(2) Plea of Guilty or Nolo Contendere
110k1026.10(4) Issues considered.

Plea court's failure to make clear that appellate waiver would bar review of defendant's suppression claim rendered the waiver unenforceable, where defendant was adamant that he wanted to retain his right to appeal the suppression ruling, and he was willing, at least at first, to forego the plea agreement to ensure that he could raise that issue on appeal.

[6] Criminal Law ⚖=1026.10(4)

110 ----
110XXIV Review
110XXIV(D) Right of Review
110k1025 Right of Defendant to Review
110k1026.10 Waiver or Loss of Right
110k1026.10(2) Plea of Guilty or Nolo Contendere
110k1026.10(4) Issues considered.

Written appeal waiver did not cure court's failure, during plea colloquy, to make clear that appeal waiver would bar review of defendant's suppression claim, where there was no on-the-record reference to the written waiver.

[7] Criminal Law ⚖=1045

110 ----
110XXIV Review
110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)(1) In General
110k1045 Necessity of ruling or objection or motion.

Defendant's claim that police officers lacked reasonable suspicion to stop him when the blocked his car was preserved for appellate review, in response to defendant's contention that officers lacked probable cause to stop him, the court expressly decided the issue of reasonable suspicion. McKinney's CPL § 470.05(2).

[8] Arrest ⚖=60.2(10)

35 ----
35II On Criminal Charges
35k60.2 Investigatory Stop or Frisk

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

35k60.2(6) Grounds for Stop or Investigation
35k60.2(10) Reasonableness; reason or founded suspicion, etc.

A forcible stop and detention is permissible where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor. McKinney's Const. Art. 1, § 12.

[9] Arrest ⚖=60.4(1)

35 ----
35II On Criminal Charges
35k60.4 What Constitutes a Seizure or Detention
35k60.4(1) In general.

Whether a police intrusion has amounted to a forcible stop and detention turns on whether there has been a significant interruption with an individual's liberty of movement.

[10] Arrest ⚖=60.4(2)

35 ----
35II On Criminal Charges
35k60.4 What Constitutes a Seizure or Detention
35k60.4(2) Particular cases.

By blocking the defendant's car to prevent it from moving, police officers "stopped" it, and thus reasonable suspicion was required. McKinney's Const. Art. 1, § 12.

[11] Arrest ⚖=60.3(2)

35 ----
35II On Criminal Charges
35k60.3 Motor Vehicle Stops
35k60.3(2) Particular cases.

Police officer lacked reasonable suspicion to believe that defendant had committed, was committing, or was about to commit a crime, as required to warrant stop of defendant's vehicle by blocking its movement with his vehicle; although officer who stopped defendant's vehicle was trained in identifying narcotics transactions and was aware of numerous drug transactions in the neighborhood, he did not see what defendant and pedestrian exchanged, could not see if one of the men gave the other something in return for something else, and did not see money pass between the two men. McKinney's Const. Art. 1, § 12.

[12] Automobiles ⚖=349(2.1)

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

981 N.Y.S.2d 806, 115 A.D.3d 875, People v. Loper, (N.Y.A.D. 2 Dept. 2014)                    **Page 3**

48A ----
    48AVII Offenses
    48AVII(B) Prosecution
    48Ak349 Arrest, Stop, or Inquiry;    Bail or Deposit
    48Ak349(2) Grounds
    48Ak349(2.1) In general.

Resolution of the issue of whether the police officers possessed reasonable suspicion to conduct a traffic stop requires evaluation of the totality of the circumstances. McKinney's Const. Art. 1, § 12.

[13]  Criminal Law ⟨key⟩1186.1

110 ----
    110XXIV Review
    110XXIV(U) Determination and    **\*806** Disposition of Cause
    110k1185 Reversal
    110k1186.1 Grounds in general.

Reversal of defendant's conviction of criminal possession of a controlled substance in the third degree also required reversal of his conviction of criminal possession of a weapon in the second degree, inasmuch as his plea of guilty to the weapons charge was premised on the promise of a sentence that would run concurrently with the sentence imposed on the drug charge.

**\*808**  Lynn W.L. Fahey, New York, N.Y.  (Barry Stendig of counsel), for appellant.

Richard A. Brown, District Attorney, Kew Gardens, N.Y.  (John M. Castellano and Jennifer Hagan of counsel; Jonathan K. Yi on the brief), for respondent.

REINALDO E. RIVERA, J.P., RUTH C. BALKIN, SYLVIA O. HINDS-RADIX, and JOSEPH J. MALTESE, JJ.

Appeals by the defendant from two judgments of the Supreme Court, Queens County (Griffin, J.), both rendered June 1, 2012, convicting him of criminal possession of a weapon in the second degree under Indictment No. 2426/11, and criminal possession of a controlled substance in the third degree under Indictment No. 10248/11, upon his pleas of guilty, and imposing sentences.  The appeal from the judgment rendered under Indictment No. 10248/11 brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

ORDERED that the judgments are reversed, on the law, that branch of the defendant's omnibus motion which was to suppress physical evidence under Indictment No. 10248/11 is granted, Indictment No. 10248/11 is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50 and to afford the defendant an opportunity to withdraw his plea of guilty under Indictment No. 2426/11.

On January 22, 2011, in a Queens County neighborhood in which numerous narcotics sales had taken place, a detective assigned to a narcotics unit was driving an unmarked police van when he saw a car containing two men pull over to the curb.  The detective saw a third man approach the passenger side of the car, lean in, and apparently exchange something with the defendant, who was in the driver's seat. The detective did not see what was being exchanged and did not see any money passed between the men.  Moreover, there is no evidence that the men were acting in a manner that could be described as furtive. Nonetheless, based on his training and his knowledge of how drug deliveries were made in the neighborhood, the detective suspected that he was witnessing a drug transaction.  After positioning the van to block the defendant's car from proceeding, the detective and his partner got out of the van and approached the defendant's car.  The third man, who was still standing by the side of the car, looked at the detective, appeared startled, and dropped something through the open passenger-side window.  The detective ordered the three men not to move and, from outside the car, saw a "twist" of what he believed from his training and experience to be crack cocaine on the passenger seat **\*809** of the car.  The detective and his partner arrested the men and recovered the crack cocaine they had seen, as well as additional crack cocaine they found in the car.  The defendant was charged, under Indictment No. 10248/11 (hereinafter the drug indictment) with numerous drug felonies.  A few months later, the defendant was arrested and charged under Indictment No. 2426/11 (hereinafter the weapon possession indictment) with numerous unrelated weapon possession felonies.

In January 2012, the Supreme Court conducted a suppression hearing in connection with the drug indictment.  At the conclusion of the hearing, the court denied that branch of the defendant's omnibus motion which was to suppress the crack cocaine found in the defendant's car.

Several months later, the Supreme Court told the defendant that, in exchange for a "top-count" plea of

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

181 N.Y.S.2d 806, 115 A.D.3d 875, People v. Lopez, (N.Y.A.D. 2 Dept. 2014)

guilty on each indictment, it would sentence him to the minimum term on each indictment and would order that the sentences be served concurrently. The defendant insisted that he wanted to retain the right to appeal the court's suppression ruling. The court responded that it, and the People, wanted the case to be over, and that the defendant could go on if he wished. Then, the court told the defendant that certain "technicalities" survived appeal waivers, and the defendant immediately told the court that, in reliance on the court's statement about the survival of some "technicalities," he would accept the court's offer. The defendant then pleaded guilty on both indictments and purported to waive his right to appeal. He was never directly told that his appeal waiver would bar appellate review of his suppression claim.

On the appeal under Indictment No. 16248/11, the defendant challenges the appeal waiver and the denial of that branch of his omnibus motion which was to suppress the crack cocaine found in his car.

[1][2][3][4] To be enforceable, an appeal waiver must be voluntary, knowing, and intelligent (see People v. Callahan, 80 N.Y.2d 273, 283, 590 N.Y.S.2d 46, 604 N.E.2d 108; People v. Seaberg, 74 N.Y.2d 1, 11, 543 N.Y.S.2d 968, 541 N.E.2d 1022). "An appellate waiver meets this standard when a defendant has 'a full appreciation of the consequences' of such waiver" (People v. Bradshaw, 18 N.Y.3d 257, 264, 938 N.Y.S.2d 254, 961 N.E.2d 645, quoting People v. Seaberg, 74 N.Y.2d at 11, 543 N.Y.S.2d 968, 541 N.E.2d 1022). The plea court must determine, in the first instance, whether an appeal waiver is voluntary, knowing, and intelligent "by considering all the relevant facts and circumstances surrounding the waiver, including the nature and terms of the agreement and the age, experience and background of the accused" (People v. Seaberg, 74 N.Y.2d at 11, 543 N.Y.S.2d 968, 541 N.E.2d 1022; see People v. Bradshaw, 18 N.Y.3d at 264–265, 938 N.Y.S.2d 254, 961 N.E.2d 645). Additionally, "though a ... court need not engage in any particular litany" or catechism in satisfying itself that a defendant has entered a knowing, intelligent and voluntary appeal waiver, a ... court 'must make certain that a defendant's understanding' of the waiver ... is evident on the face of the record" (People v. Bradshaw, 18 N.Y.3d at 265, 938 N.Y.S.2d 254, 961 N.E.2d 645, quoting People v. Lopez, 6 N.Y.3d 248, 256, 811 N.Y.S.2d 623, 844 N.E.2d 1145). A written waiver may cure an ambiguity in an oral colloquy (see People v. Ramos, 7 N.Y.3d 737, 738, 819 N.Y.S.2d 853, 853 N.E.2d 222), but only if the oral colloquy on the record reflects the defendant's understanding of its contents (see People v. Bradshaw, 18 N.Y.3d at 265, 267, 938 N.Y.S.2d 254, 961 N.E.2d 645; People v. Nugent, 109 A.D.3d 625, *818 970 N.Y.S.2d 634; To view preceding link please click here People v. Parris, 106 A.D.3d 555, 556, 965 N.Y.S.2d 125; cf. People v. Simmons, 113 A.D.3d 420, 977 N.Y.S.2d 889; People v. Morey, 110 A.D.3d 1378, 975 N.Y.S.2d 201).

[5][6] Here, the Supreme Court discussed the appeal waiver extensively, but never made clear that it would bar appellate review of the defendant's suppression claim. Under the circumstances of this case, the waiver is not enforceable. The defendant was adamant that he wanted to retain his right to appeal the suppression ruling, and he was willing, at least at first, to forego the plea agreement to ensure that he could raise that issue on appeal. Thus, for the appeal waiver to foreclose appellate review of the defendant's suppression claim, it was necessary that the record reflect the defendant's awareness that his appeal waiver would foreclose appellate review of the claim. Nothing on the record reflects that awareness. Moreover, inasmuch as there was no on-the-record reference to the written appeal waiver, that waiver cannot cure the deficiency in the oral colloquy (see People v. Bradshaw, 18 N.Y.3d at 265, 267, 938 N.Y.S.2d 254, 961 N.E.2d 645; see also People v. DeSimone, 80 N.Y.2d 273, 283, 590 N.Y.S.2d 46, 604 N.E.2d 108). Accordingly, the defendant's otherwise valid waiver of his right to appeal does not foreclose appellate review of his suppression claim.

[7] The People nonetheless contend that the defendant failed to preserve for appellate review his claim that the police officers lacked reasonable suspicion to stop him when they blocked his car. This contention is without merit. In response to the defendant's contention that the police officers lacked probable cause to stop him, the hearing court expressly decided the issue of reasonable suspicion. Therefore, the defendant's claim is preserved for appellate review as a question of law (see CPL 470.05[2]); People v. Edwards, 95 N.Y.2d 486, 490 n. 2, 719 N.Y.S.2d 202, 741 N.E.2d 876; People v. Palmer, 84 A.D.3d 1414, 923 N.Y.S.2d 907; People v. Fermin, 36 A.D.3d 934, 935, 828 N.Y.S.2d 546; People v. Madison, 22 A.D.3d 684, 686, 804 N.Y.S.2d 339, People v. Parson, 282 A.D.2d 477, 478, 722 N.Y.S.2d 412; cf. People v. Bonilla, 81 A.D.3d 556, 917 N.Y.S.2d 187).

[8][9] A forcible stop and detention is permissible "[w]here a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or

981 N.Y.S.2d 806, 115 A.D.3d 875, People v. Loper, (N.Y.A.D. 2 Dept. 2014)                    **Page 5**

misdemeanor" (*People v. De Bour,* 40 N.Y.2d 210, 223, 386 N.Y.S.2d 375, 352 N.E.2d 562; *see People v. Benjamin,* 51 N.Y.2d 267, 270, 434 N.Y.S.2d 144, 414 N.E.2d 645; *People v. Davenport,* 92 A.D.3d 689, 690, 939 N.Y.S.2d 473; *People v. Morales,* 58 A.D.3d 873, 874, 872 N.Y.S.2d 192). Reasonable suspicion has been defined as "that quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand" (*People v. Martinez,* 80 N.Y.2d 444, 448, 591 N.Y.S.2d 823, 606 N.E.2d 951 [internal quotation marks and citation omitted] ). Whether a police intrusion has amounted to a forcible stop and detention turns on whether there has been "a significant interruption with an individual's liberty of movement" ( *People v. De Bour,* 40 N.Y.2d at 216, 386 N.Y.S.2d 375, 352 N.E.2d 562; *see People v. Bora,* 83 N.Y.2d 531, 534, 611 N.Y.S.2d 796, 634 N.E.2d 168).

[10][11][12] Here, by blocking the defendant's car to prevent it from moving, the police officers "stopped" it (*People v. Jennings,* 45 N.Y.2d 998, 999, 413 N.Y.S.2d 117, 385 N.E.2d 1045; *see People v. Hurdle,* 106 A.D.3d 1100, 1104, 965 N.Y.S.2d 626; *People v. Lopez,* 75 A.D.3d 610, 612, **\*811.** 905 N.Y.S.2d 647). To view preceding link please click here Accordingly, reasonable suspicion was required (*see People v. Hurdle,* 106 A.D.3d at 1104, 965 N.Y.S.2d 626; *People v. Lopez,* 75 A.D.3d at 612, 905 N.Y.S.2d 647; *People v. Creary,* 61 A.D.3d 887, 889, 877 N.Y.S.2d 208). Resolution of the issue of whether the police officers possessed reasonable suspicion requires evaluation of the totality of the circumstances (*see People v. Williams,* 69 A.D.3d 663, 664, 893 N.Y.S.2d 130; *People v. Hoover,* 236 A.D.2d 626, 628, 653 N.Y.S.2d 955; *People v. Graham,* 211 A.D.2d 55, 58-59, 626 N.Y.S.2d 95). Upon our evaluation of the totality of the circumstances in this case, we conclude that, at the time the police officers blocked the defendant's car, they lacked reasonable suspicion to believe that the defendant had committed, was committing, or was about to commit a crime. Although the detective who stopped the defendant's car was trained in identifying narcotics transactions and was aware of numerous drug transactions in the neighborhood, including some involving car deliveries of drugs, he did not see what

the defendant and the pedestrian exchanged, could not see if one of the men gave the other something in return for something else, and did not see money pass between the two men (*cf. People v. Wynn,* 25 A.D.3d 576, 577, 808 N.Y.S.2d 717; *People v. Oeller,* 191 A.D.2d 355, 595 N.Y.S.2d 192, *affd.* 82 N.Y.2d 774, 604 N.Y.S.2d 537, 624 N.E.2d 674). Moreover, the detective saw only one exchange (*cf. People v. Coleman,* 183 A.D.2d 840, 840-841, 584 N.Y.S.2d 89), did not describe any furtive conduct on the part of the two men (*cf. People v. Garcia,* 96 A.D.3d 481, 482, 948 N.Y.S.2d 242; *People v. Bonilla,* 81 A.D.3d 555, 556, 917 N.Y.S.2d 187), or, indeed, any other conduct that would give rise to a reasonable suspicion that he was observing a drug transaction (*cf. People v. Smalls,* 111 A.D.3d 582, 975 N.Y.S.2d 396; *People v. DiMatteo,* 62 A.D.3d 418, 878 N.Y.S.2d 319). The detective's observations supported only a "founded suspicion that criminal activity [was] afoot" (*People v. De Bour,* 40 N.Y.2d at 223, 386 N.Y.S.2d 375, 352 N.E.2d 562; *see People v. Soscia,* 96 A.D.3d 1081, 1081, 946 N.Y.S.2d 653; *People v. Martin,* 88 A.D.3d 473, 474, 931 N.Y.S.2d 7, *affd.* 19 N.Y.3d 914, 950 N.Y.S.2d 84, 973 N.E.2d 179; *People v. Chin,* 25 A.D.3d 461, 462, 808 N.Y.S.2d 661), which is insufficient to justify the stop of the defendant's car ( *see People v. Jennings,* 45 N.Y.2d at 999, 413 N.Y.S.2d 117, 385 N.E.2d 1045; *People v. Hurdle,* 106 A.D.3d at 1104, 965 N.Y.S.2d 626). Consequently, that branch of the defendant's omnibus motion which was to suppress the crack cocaine must be granted. Without that evidence, there could not be sufficient evidence to prove his guilt, and the drug indictment must therefore be dismissed.

[13] The defendant raises no independent claim on the appeals with respect to his conviction relating to the weapon possession indictment, but the judgment on that indictment must be reversed inasmuch as his plea of guilty in that case was premised on the promise of a sentence that would run concurrently with the sentence imposed on the drug indictment (*see People v. Williams,* 17 N.Y.3d 834, 836, 930 N.Y.S.2d 530, 954 N.E.2d 1155; *People v. Fuggazzatto,* 62 N.Y.2d 862, 863, 477 N.Y.S.2d 619, 466 N.E.2d 159). The defendant is entitled to an opportunity to withdraw his plea of guilty in that case, and we remit the matter to the Supreme Court, Queens County, for that purpose.

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TA-MAR LOPER  # 12-A-2718

    Plaintiff,

V.

DETECTIVE STEPHEN MUNAFO,
      ET AL.

    DEFENDANTS

AFFIDAVIT OF SERVICE

CIVIL ACTION NO. _____

RECEIVED
PRO SE OFFICE
2015 SEP 16  A 11: 30

STATE OF NEW YORK )

AFFIDAVIT OF TA-MAR LOPER  # 12-A-2718

COUNTY OF THE BRONX )

I, TA-MAR LOPER # 12A2718 being duly sworn according to the law deposes & says that I am the Plaintiff in the above entitled Proceeding.

1) On the 14th day of September, 2015, I deposited in a U.S. Mail-box (1) 10 pg 42 USC 1983 complaint, (1) Informa Pauperis Motion and Required pgs and exhibits to be forwarded with the 1983 and (1) Motion for Appointment of Counsel and exhibits. going to the Pro Se Unit Clerk.
2) This Mailbox located at Greenhaven C.F., Box 4000, Stormville, N.Y. 12582-4000
3) This mail is going to the PROSE INTAKE Unit of the U.S. District Court of the Southern District of New York at 500 Pearl Street, New York, N.Y. 10007-1312
4) All of the information I have submitted in support of this Affidavit of Service is true & correct.

x _____
TA-MAR LOPER
12A2718

Sworn to before me this
10th day of September, 2015
_____
NOTARY Public

NOTARY PUBLIC
PATRICK LEON MCNEIL
No. 01MC6324976
Exp. 05/18/2019
BRONX COUNTY
STATE OF NEW YORK

*EXHIBIT E-*
*IFI*

08860429701                                              Page 3 of 4

# PAYMENT STUB

- Return the bottom portion of the stub with your payment.

- Use the enclosed envelope to mail your payment to us.

- Do not send cash.

- Do not enclose any correspondence with your remittance.  Send any correspondence to:  Social Security Administration, Northeastern Program Service Center, PO Box 314400, Jamaica NY 11431-9887.

- If you have changed your address or telephone number, be sure to check the box below and write your new address or telephone number in the space provided.

- If you pay by check or money order, include the Social Security Account Number as shown below and make the check or money order payable to "Social Security Administration."

- If paying by credit card, complete the appropriate information below and return it in the enclosed envelope **OR**
  to pay by phone, call 1-888-280-9419 TOLL FREE during the hours 8:00 AM to 5:45 PM ET.  Please have this notice and your credit card available when you call.

---

SSA-53-EP            DETACH HERE. DO NOT STAPLE.

ACCOUNT NUMBER:  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-01          []MASTERCARD    []VISA    []DISCOVER
TAMAR E LOPER
                                          Credit Card Number                        Exp Date
AMOUNT DUE:   $1,617.11
DATE DUE:  March 9, 2012                  _____  _____        _____

PAYMENT
AMOUNT   $ _____             Cardholder's Signature              Date

        Check box if your address or         _____  _____        _____
[]      telephone number has changed.
        Make changes below.

_____  _____           SOCIAL SECURITY ADMINISTRATION
                                           PO BOX 3430
_____  _____           PHILADELPHIA PA  19122-9985

308860429701000000040000000010001617110001617110001617110S0000000000006

08860429701                                                                      Page 4 of 4

## Privacy Act Statement

The Social Security Administration (SSA) has authority to collect the information requested on the PAYMENT STUB under section 204 of the Social Security Act. Giving us this information is voluntary. You do not have to do it. We will need this information only if you choose to make payment by credit card. You do not need to fill out the credit card information if you choose another means of payment (for example, by check or money order).

If you choose the credit card payment option, we will provide the information you give us to the banks handling your credit card account and SSA's account. This will allow us to repay your overpayment with your credit card. We may also provide this information to another person or government agency to comply with federal laws requiring the release of information from our records. You can find these and other routine uses of information provided to SSA listed in the Federal Register. If you want more information about this, you may call or write any Social Security office.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, State, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about these and other reasons why information you provide us may be used or given out are available in Social Security offices. If you want to learn more about this, contact any Social Security office.

Document #: 5980

P.O. Box 1259
Oaks, PA 19456

ARS National Services, Inc.
P.O. Box 463023
Escondido, CA  92046-3023
(888) 238-8232  FAX: (866) 422-0765
**www.PayARS.com**

April 30, 2012

New York City License: 1020790

TAMAR E LOPER
11631 166TH ST
JAMAICA NY 11434-1717

7259 - 659

**ACCOUNT IDENTIFICATION**
Re: CAPITAL ONE BANK (USA), N.A.
Account: ************7387
ARS Acct No: 25000312
Balance: $453.65

**Anticipating a Tax Refund this Year?**
**Call ARS now or visit us at www.payars.com.  We can help you resolve this debt.**

As a professional collection agency hired by CAPITAL ONE BANK (USA), N.A., ARS is authorized to settle the above-referenced account for $317.56.  To take advantage of this settlement, your payment must reach this office by 06-04-12.

To ensure the settlement is received by the indicated due date, ARS offers "Quick Check" by phone, Western Union "Quick Collect" (Code City: ARS 25000312), Moneygram "Express Payment" (Receive Code: 2473), or you can make your payment online at www.PayARS.com.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please contact this office at (888) 238-8232.  Our office hours are Monday through Friday, 6:30 a.m. - 8:00 p.m (Mountain Time).

Sincerely,

Account Representative

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

(SEE REVERSE SIDE FOR IMPORTANT INFORMATION)
Detach And Return With Payment

CP170 - 25000312
Account:     ************7387

Amount Enclosed: $_____

Enclosing this coupon with your payment will
expedite credit to your account.

**NOTICE OF ELECTRONIC CHECK PROCESSING:**
We reserve the right to process checks electronically by transmitting the routing, account, and check number to the bank. By submitting a check, you authorize us to initiate an electronic debit from your account.  A returned check may be collected electronically if it is returned for insufficient funds.

Print address/phone changes below
or call (888) 238-8232.
_____
_____
HOME:(___)_____
WORK:(___)_____

Make your check or money order payable to:

ARS
PO BOX 469047
ESCONDIDO, CA 92046-9047


CP170

7259 - 659

# SPENCE LAW OFFICE, P.C.
## (516) 336-2060

Nassau Office
500 North Broadway, Ste 200
Jericho, New York 11753

Queens Office
118-35 Queens Blvd, Ste. 1500
Forest Hills, New York 11375

Manhattan Office
20 Pine St., Ste. 2007
New York, NY 10005

Suffolk Offices
23 Green Street, Suite 300
Huntington, New York 11743
***
152 Waverly Avenue
Patchogue, New York 11772

April 4, 2013

TA MAR Loper
11631 166th St
Jamaica, NY 11434-1717

Dear TA MAR,

We recently received information from the County Clerk's records, that a Judgment was docketed against you by CLOVER COMMERCIAL CORP in the County Clerk's Office in the amount of $7,057.00. WE DO NOT REPRESENT THIS CREDITOR IN ANY WAY AND THIS IS NOT AN ATTEMPT TO COLLECT A DEBT. We are a bankruptcy law firm offering our services to assist you. When a judgment is docketed against an individual such as yourself, the judgment creditor is free to take action against you such as contacting your employer to garnish your wages, freezing your bank account(s) and seeking to recover against other assets. You can avoid all of these inconveniences by calling us.

Our office has helped many individuals like you file for bankruptcy relief. A bankruptcy filing will stop CLOVER COMMERCIAL CORP from taking any action against you. In addition, new laws allow you to more fully protect your home, automobile and other assets within bankruptcy. In just a few moments, one of our experienced attorneys can analyze your situation, answer your questions and assist you in developing an action plan to resolve your issues with CLOVER COMMERCIAL CORP and other creditors.

Please contact our office at **516-336-2060** to set up a free consultation. We serve the entire New York area and look forward to hearing from you.

**AGAIN, WE ARE NOT A DEBT COLLECTOR**. WE ARE WRITING TO HELP YOU PROTECT YOUR ASSETS AND WAGES. CALL TODAY FOR A FREE CONSULTATION!

**For Spanish speaking customers only:**

**Se habla Español:**
Para hablar con un profesional
sobre su deuda llame este numero:
**1(855) 254-8461**

Sincerely,

Robert J. Spence, Esq.
Email: rspence@spencelawpc.com

We are a debt relief agency. We help people file for bankruptcy relief under the bankruptcy code.
Please note that prior results do not guarantee a similar outcome.
Attorney Advertisement

DEPT 376    6265292814049
PO BOX 4115
CONCORD CA  94524

April 22, 2014

ADDRESS SERVICE REQUESTED

#BWNFTZF #CPE6265292814049#

1018594476 - 48A
TAMAR LOPER
11631 166TH ST
JAMAICA NY 11434-1717

| ACCOUNT NUMBER | PRINCIPAL BAL. | INTEREST |
|---|---|---|
| 1018594476 | $7,056.60 | $588.81 |
| PENALTY CHARGES | FEES & COSTS | CURRENT BALANCE |
| $0.00 | $1,860.89 | $9,506.30 |
| | AMOUNT PAID | |

**DO NOT SEND CASH.**
**MAKE CHECKS PAYABLE TO: U.S. DEPARTMENT OF EDUCATI**
**SHOW YOUR SOCIAL SECURITY NUMBER ON YOUR CHECK.**
**RETURN THIS PORTION WITH YOUR PAYMENT.**

SEND PAYMENT TO:

National Payment Center
US Department of Education
PO BOX 105028
ATLANTA GA  30348-5028

4  410185944769  0000004950  00000595        4  410185944769  0004222014  9506303

---

Dear TAMAR LOPER:

This notice is from Coast Professional, Inc. The Department of Education, the current holder of your defaulted student loan or grant overpayment debt, has placed your account with this agency for immediate collection.

This letter is to notify you that the U.S. Department of Education (ED) has referred your account to Coast Professional, Inc. for collection of your defaulted student loan debt.  At this time, balance in full on your account is due and payable. As of the date of this letter, you owe the balance indicated above.  Because of interest or other fees that may vary from day to day, the amount due on the day you pay may be greater.  Coast Professional, Inc. is committed to providing assistance to you in determining the best resolution to your obligation.  Our staff is trained to discuss all available options for repayment of your debt.  Please telephone one of our representatives for assistance at this toll free telephone number.

1-(800) 964-0881

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you provide Coast Professional, Inc. with a written request, within 30 days after receiving this notice, our office will provide you with the name and address of the original creditor, if different from the current creditor.

Coast Professional, Inc.
P.O. Box 2899
West Monroe, LA 71294
(800) 964-0881

Our office hours are:        8am to 9pm EST Mon. - Thurs.
                             8am to 4:30pm EST Fri.

THIS IS AN ATTEMPT TO COLLECT A DEBT; ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

**IMPORTANT INFORMATION CAN BE FOUND ON THE BACK OF THIS PAGE......**

CPE48A-0422-468159135-00952-952

## NOTE CHANGES ONLY

FIRST NAME  
MI  
LAST NAME  
ADDRESS  
CITY  
STATE  
ZIP  
HOME PHONE  
WORK PHONE  

SEND PAYMENT TO:

National Payment Center
US Department of Education
PO BOX 105028
ATLANTA GA 30348-5028

**CALIFORNIA:** The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment.

As required by law, you are hereby notified that a negative credit report reflecting your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. We will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described above on the front of this letter.

For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**COLORADO:** A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

Local Colorado Office: 3605 Mead Street, Fort Collins, CO 80526 Tele: (970) 226-1386.

FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE: WWW.COLORADOATTORNEYGENERAL.GOV/CA

**MASSACHUSETTS:** NOTICE OF IMPORTANT RIGHTS - YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY 10 DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN 7 DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR AT P.O. BOX 2899, WEST MONROE, LA 71294. OFFICE HOURS: 9:00 AM - 9:00 PM CST MONDAY-THURSDAY AND 9:00 AM - 4:30 PM CST FRIDAY.

**MINNESOTA:** This agency is licensed by the Minnesota Department of Commerce.

**NEW YORK:** New York City Department of Consumer Affairs License Number: Geneseo NY #1334772, Henrietta NY# 1472229 LA# 1334773. This collection agency is also licensed by the city of Buffalo, LICENSE# 556370.

Consumer call back number is (585) 991-5200, and ask for Jonathan Prince.

**NORTH CAROLINA:** This collection agency is licensed in North Carolina, pursuant to permit numbers 103595, 111927, and 111928.

**TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Tennessee Department of Commerce and Insurance, James Robertson Parkway, Nashville, Tennessee 37243.

**UTAH:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. We will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described above on the front of this letter.

**WEST VIRGINIA:** The activities of collection agencies in West Virginia are regulated by the Attorney General's Consumer Protection Division, 812 Quarrier St., Charleston, WV 25301. Federal law prohibits agencies from contacting you about your debt if you send a letter requesting that all contact stops.

**WISCONSIN:** This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions. www.wdfi.org.

2.   In further support of my application, I declare that (check appropriate box):

☑   I have previously filed a Request to Proceed *In Forma Pauperis* application in this proceeding, and it is a true and correct representation of my current financial status.

☐   I have not previously filed a Request to Proceed *In Forma Pauperis* in this proceeding, and now attach an original Request to Proceed *In Forma Pauperis* application detailing my financial status.

☐   I have previously filed a Request to Proceed *In Forma Pauperis* application in this proceeding, however, my financial status has changed. I have attached another Request to Proceed *In Forma Pauperis* application showing my current financial status.

3.   I understand that if a lawyer volunteers to represent me and that lawyer learns that I can afford to pay for a lawyer, the lawyer may give this information to the Court.

4.   I understand that if my answers on this application are false, my case may be dismissed.

5.   **I declare under penalty of perjury that the foregoing is true and correct.**

Dated: September 8th, 2015

_____
Signature

\*\*\*Please note that even if the Court grants your request for counsel, you will receive *pro bono* counsel only if a member of the Court's *Pro Bono* panel volunteers to take your case. There is no guarantee that you will actually get counsel.\*\*\*

*Rev. 10/2010*

| Anna M. Kross Correctional Facility | OLUSEGUN OLATUNBOSUM, R-PAC |
|---|---|
| 18-18 Hazen Street  East Elmhurst, NY 11370 | Physician Assistant |
| Tel: 718-546-3550   Fax: | |

| | | |
|---|---|---|
| **Patient:** | LOPER, TAMAR | <u>03/02/2015</u> |
| **DOB:** | 10/20/1976, Sex: Male | |
| **Address:** | GREAT MEADOW CORR, PH, COMSTOCK, NY 12821 | |
| **Phone:** | | |

| | |
|---|---|
| **Ordered Date:** | 12/25/2014 |
| **Assessments:** | <u>HX OF SCHIZOPHRENIA</u> |
| **Lab:** | HEMOGLOBIN A1C (glycohemoglobin) |
| **Fasting:** | No |
| **Specimen:** | Collection Date:01/01/2015   Time:12:50 PM |
| **Clinical Info:** | |

| Name | Value | Reference Range |
|---|---|---|
| Hemoglobin A1C | 5.5 | < 5.7 % |
| **Result:** | Negative | |
| **Received Date:** | 01/02/2015 | |
| **Notes:** | Larsen,Patricia 1/1/2015 12:34:02 PM > . | |

Patient Name: LOPER, TAMAR , DOB: 10/20/1976

EXHIBIT-A

FORM 331A MED CNYPC (Rev. 7/09)   Page 3          TREATMENT PLAN (Continuation Page)

| Unit GMCF – 718 | Patient's Name (Last, First, M.I.) Loper, Tamar | DIN# 12A2718 | C# 189864 |
|---|---|---|---|

| STAFF SIGNATURE/TITLE: *Z Forbes    RC II* | DATE: 10/22/13 |
|---|---|
| PHYSICIAN SIGNATURE/ TITLE: | DATE: |

**GOAL PLAN:**

Instructions:        Identify the major treatment goals.  Use a separate page for each goal.

| Goal: | No. _3___ Date Established _10_/_21_/_13_ | Status/Date A    Attained R    Revised D/C Discontinued |
|---|---|---|

| Pt. will develop effective coping skills to minimize his psychiatric symptoms in order to promote optimal level of functioning as evidenced by patient's statements and behavior, ability to follow daily routine without need for crisis intervention and/or disciplinary problems. Per policy, goal of ICP is to improve patients' ability to function through programming and treatment to enable pt. to return to general population. Goal will be re-evaluated every 6 months to determine need to continue or modify. | |
|---|---|

Indicate patient outcomes to be achieved for this goal.

| Letter | Objectives: | Date Established | Target Date | Status/ Date A    Attained R    Revised D/C Discon't | Methods For each objective, indicate staff treatment interventions, including duration, frequency, and responsible staff. |
|---|---|---|---|---|---|
| A | Pt. will maintain medication compliance and attend sessions with psychiatrist/NPP and clinician. | 10/21/13 | 4/19/14 | | A) Sessions with psychiatrist/NPP monthly or PRN. RN staff will administer medication as prescribed, assess side effects, and provide medication education as needed. |
| B | Pt will verbalize an understanding of his illness and need for treatment. Pt. will discuss thoughts and feelings to identify patterns of thinking and specific stressors. | 10/21/13 | 4/19/14 | | B, C) Sessions with clinician for supportive counseling to assist pt. in identifying his strengths to enable him to improve his ability to handle his illness. |
| C | Pt will communicate in a relevant, organized and reality based manner. Pt. will verbalize positive statements regarding his ability to handle his emotions and behaviors. | 10/21/13 | 4/19/14 | | D, E, F, G) ICP program M-F, various groups and activities. |

OMH-PHI

OMH-PHI

**GOAL PLAN:**

Instructions: Identify the major treatment goals. Use a separate page for each goal.

**Goal: SUICIDAL RISK ASSESSMENT**

No. 4

Date Established 10 / 21 / 13

Status/Date
A Attained
R Revised
D/C Discontinued

Pt. will develop, verbalize and demonstrate skills/strategies to minimize and manage any symptoms that could contribute to increased suicidal risk.

Indicate patient outcomes to be achieved for this goal.

|  | Goal | | | |
|---|---|---|---|---|
| D | Pt. will develop and demonstrate specific coping skills that help minimize his psychiatric symptoms. | 10/21/13 | 4/19/14 | Patient will meet with primary therapist once a month for supportive therapy and education about depression. Therapist will assist patient in developing coping strategies to better manage his symptoms. |
| E | Pt. will demonstrate appropriate social skills with peers and staff, with no overt withdrawal, isolation or aggression. Pt will maintain adequate hygiene and eat sufficient meals. | 10/21/13 | 4/19/14 | Patient may require RCTP placement in order to provide a holding environment while dealing with affect. |
| F | Pt. will participate in ICP groups and activities with minimal prompting. | 10/21/13 | 4/19/14 | Patient currently attends groups |
| G | Pt. will participate in discharge planning with staff and verbalize an understanding that ICP is a program to prepare them to return to population. | 10/21/13 | 4/19/14 | |

| Unit GMCF-718 | Patient's Name (Last, First, M.I.) Lopez, Tamar | DIN# 12A2718 | C# 189864 |
|---|---|---|---|

NY - 42
Revised (03-08)

**NOTICE TO PATIENTS**

You have been admitted to Central New York Psychiatric Center under Section 402 of the Correction Law. You are entitled to receive care and treatment which is suited to your needs and which is administered skill-fully and humanely, with full respect for your dignity and personal integrity.

**MENTAL HYGIENE LEGAL SERVICE**

The Mental Hygiene Legal Service is a court agency independent of the hospital and established to protect your rights. This service will answer any questions about your rights and status in this hospital. You may freely communicate directly with the Mental Hygiene Legal Service, the hospital Director, the Board of Visitors, if any, the Commissioners of Mental Hygiene and Correction Departments and you may correspond with any person outside the hospital under Correction Law procedures.

While you are a patient, you may have the right to consult with and be assisted by a representative of the Mental Hygiene Legal Service.

If you desire a court hearing on the questions of your hospitalization, ask to talk to the Mental Hygiene Legal Service.

A patient's relatives or friends may also communicate with the Mental Hygiene Legal Service. The address and phone number is:

MENTAL HYGIENE LEGAL SERVICE
CENTRAL NEW YORK PSYCHIATRIC CENTER
BOX 300
MARCY, NY 13403-0300

TELEPHONE: (315) 765-3600, Extension 3375

DATE: 6/25/15

NAME/TITLE OF STAFF MEMBER SERVING NOTICE

SIGNATURE OF PATIENT

CC: Original – Patient
     Copy – Medical Record

CNY - 55

## STATE OF NEW YORK OFFICE OF MENTAL HEALTH

Proceedings For Commitment of a Mentally Ill Inmate
To a State Hospital For The Mentally Ill In The
State Office of Mental Health
(Correction Law ' 402)

STATE OF NEW YORK

Supreme Court, County of Oneida

_____

IN THE MATTER OF
THE COMMITMENT TO A STATE HOSPITAL FOR THE
MENTALLY ILL IN THE STATE OFFICE OF
MENTAL HEALTH

NOTICE
OF
APPLICATION

**LOPER, Tamar**

**AN ALLEGED MENTALLY ILL INMATE**

_____

TAKE NOTICE that on the annexed petition of L. Lilley and the certificates of Doctors

V. Komareth and K. Sangani application will be made before the presiding Honorable Justice

or Judge of Supreme Court at the Oneida County Courthouse at 10 A.M. on the 16th day of

July, 2015, for an order committing you to a State Hospital for the Mentally Ill in the

State Office of Mental Health, for a period not to exceed six months.

_____
(Petitioner)
Peter Russell
Interim Executive Director
Central New York Psychiatric Center

**FOR: L. Lilley, Acting Superintendent Green Haven C.F.**

FORM 402.6

CNY - 56

## STATE OF NEW YORK OFFICE OF MENTAL HEALTH

Proceedings For Commitment of a Mentally Ill Inmate
To A State Hospital For The Mentally Ill In The
State Office of Mental Health
(Correction Law ' 402)

STATE OF NEW YORK

Supreme Court, County of Oneida

---

IN THE MATTER OF
THE COMMITMENT TO A STATE HOSPITAL FOR THE
MENTALLY ILL IN THE STATE OFFICE OF
MENTAL HEALTH

PETITION

**LOPER, Tamar**

AN ALLEGED MENTALLY ILL INMATE

---

To the presiding Honorable Justice or Judge of Supreme Court; County of Oneida.  Upon the foregoing certificate of examining physicians dated 7/5/15, I hereby apply for an order committing said Tamar Loper, to a State Hospital for the mentally ill in the State Office of Mental Health. Service upon a relative or friend has been dispensed with inasmuch as there is no such known relative or friend within the state.

DATED:

(Signature) _Peter Russell_
Peter Russell, Interim Executive Director
Central New York Psychiatric Center

**FOR:  L. Lilley, Acting Superintendent Green Haven C.F.**

Greetings,

My name is TA-MAR LOPER. Enclosed is my case cite where the APPELLATE DIVISION 2nd dept. dismissed an indictment No. (QN10248/11) upon direct APPEAL for A violation of the right to be FREE from unreasonable searches & seizure. THERE WERE CCRB & IAB complaints (No's 11-508-78, 11-12783) concerning the circumstances of my Arrest (without probable cause) in means to the charges of Criminal Sale & possession of controlled substances but the 2 tribunals above failed to notice what the 2nd dept. did. During the time of my Arrest I was employed, full time As A custodian for the Long Island Rail Road And lost employment due to the detectives actions/inactions. By the QNB (Queens NAR cotics Bureau) Falsifying evidence, lying to secure A grand -jury indictment and At the Constitutional Mapp/Dunaway Hearing, A total of 885 days credited to that case alone. I would like to direct your attention to the case cite PEREZ V DURAN 2013 WL 3357166 (S.D.N.Y. 2013) and pray that you notice the similarities in what that plaintiff -ee did by bringing action for Malicious Prosecution And denial of the right to A fair trial And the difference being there Are At least 5 defendants involved in the taking of this authors freedom without probable cause And continuing prosecution against me despite blatant dis- crepancies within the paperwork.

This introductory letter is concerning A 42 USC § 1983 complaint against the Arresting officers And who ever else was involved And responsible for the tak- ing of my FREEDOM, the fact that the prosecution was aware of the facts herein stated but failed to remedy the situation in lower court; Any pro Bono or con -tingency basis fees can easily be Arranged. If your law office is interested or can make any suggestions towards compensation for the time spent upon the

UNLAWFUL INCARCERATION, Please do not hesitate to contact me concerning A Retainer Agreement. I have in my immediate possession the following:

A) Rikers Island phone Records (CD) 2011
B) Pre-trial paperwork (Criminal Court complaints, Arrest data sheets, Sworn affidavits)
C) IAB letter (one of them) and exhibits
D) Grand Jury, MAPP/Dunaway Hearing Minutes
E) Lawyers Memo. of Law and D.A. Answer
F) Judge Rulings
G) Appeal Briefs (Including D.A.)
H) Trial and Appellate counsel info.

Again, please contact me at your earliest most practicable time concerning consideration and initiation of a STATE or FEDERAL suit upon my behalf.

Cordially,
Lamar Joper

✗ I Read the Case

# DAVID J. HERNANDEZ & ASSOCIATES

*26 Court Street, Suite 2707*
*Brooklyn, New York 11242*
*Tel: 718-522-0009*

**DAVID J. HERNANDEZ\***

Natasha A. Suelflow
Marsha J. Quinche
Morris Sinensky

*Paralegal*
Tashika German

\*Admitted in New York & New Jersey

December 10, 2014

*Via First Class Mail and Certificate of Mailing*
Tamar Loper (#8951401030)
AMKC Rikers Island
18-18 Hazen Street
East Elmhurst, NY 11370

Dear Mr. Loper,

PLEASE BE ADVISED THAT THIS COMMUNICATION DOES NOT CREATE A CLIENT ATTORNEY RELATIONSHIP.

This office is in receipt of your letter dated December 2, 2014. In order for me to properly understand and evaluate your possible claim, the following information is needed:

(1) Please provide with the date of your arrest for the indictment that was dismissed;
(2) If you were represented by an attorney in the criminal proceeding, please provide their contact information;
(3) Please indicate if you were represented by an attorney for the appeal;
(4) Please provide the date your incarceration began and ended for the indictment that was dismissed;
(5) Please indicate whether you filed a Notice of Claim against the Police Officers, if so indicate when; and
(6) The status of your plea withdrawal.

Upon receipt of this letter, please contact the undersigned to discuss the matter.

Very Truly Yours,

Marsha J. Quinche, Esq.

EXHIBIT -3B

December 16th, 2014

In c/o: Marsha J. Quinche, Esq.

Greetings and Happy Holidays. My name is Ta-mar Hofer 3/c 08957401030 and I received your letter dated December 10th, 2014 and I will answer all four questions to the best of my ability:

(1) I was affected at 5:05pm, February 22nd, 2011 (have papers to prove). Bailed out March 3rd, 2011 (papers to prove). Indictment No. N10248/11

(2) Attorney Kevin P. O'Donnell (2nd Attorney after Micheal J. Giff) who is still representing me. His Address and Phone number is 125-10. Queens Boulevard, Suite 15, Kew Gardens, N.Y. 11415 Phone# 718-261-4500

(3) Appeal Attorney Barry Stendig Assistant Attorney in charge under Lynn Nicolfhely - Appellate Advocates, 2- Recter Street 10th Floor, New York, N.Y. 10006 Phone# 212-693-0085

(4) The date the incarceration began was 1/22/11 - 3/3/11 (about 41 days); 12/1/11 (w/indictment No. 2426/11) - 6/2/14 (Appeal decision rendered), plea withdrawn finalized about 925 days in which I was injured (inmate/inmate assault on 2/13/12 and guards on inmate assault on 9/20/12 w/papers to prove.)

(5) Never knew I had to file a notice of claim to file a malicious prosecution or False Arrest claim and I'm sorry. I only believed that there was a 3 year statute (of limitations) for a 42 USC section 1983 claim 3

(6) I am now custody of NYC - There's a 50/50 chance I may win (officers lied again to solidify the search warrant). If I do lose the Pre Trial Hearings, there's a very strong possibility that I'm gonna get another Reversal/indictment dismisses (70/30 chance)

Again, my introductory letter should list any and all paperwork that can be forwarded to you upon demand. Aside from my Rights, I know nothing about the Law (very minimal) and it would be highly appreciative if your office took my case, and filed a suit upon my behalf

Sincerely,

Tamar Hofer 3/c 08957401030
18-18 Hazen Street
East Elmhurst N.Y. 11370

# DAVID J. HERNANDEZ & ASSOCIATES

*26 Court Street, Suite 2707*
*Brooklyn, New York 11242*
*Tel: 718-522-0009*

**DAVID J. HERNANDEZ***

Natasha A. Suelflow
Marsha J. Quinche
Morris Sinensky

*Paralegal*
Tashika German

*Admitted in New York & New Jersey

February 4, 2015

*Via First Class Mail and Certificate of Mailing*
Tamar Loper (#8951401030)
AMKC Rikers Island
18-18 Hazen Street
East Elmhurst, NY 11370

Dear Mr. Loper,

Please be advised that after careful consideration into the facts and circumstances of your potential claim; this office will be unable to assist you in this matter. Please be further advised that this office was never retained to represent you. Thank you in advance for contacting our office.

Very Truly Yours,

Marsha J. Quinche, Esq.

LEGAL MAIL

TA-MAR LOPEZ #12-A-2718
GREENHAVEN C.F. BOX 4000
STORMVILLE, N.Y. 12582-4000

To: Pho Se Intake Clerk
United States District Court
OF THE STATE OF NEW YORK
500 PEARL STREET
New York, N.Y. 10007-1312

SDNY

2015 SEP 16  A 11: 30

RECEIVED
CORRECTIONAL
N.Y. PRO SE OFFICE
GREEN HAVEN
neopost
09/14/2015
US POSTAGE $00²